[Cite as *Tedla v. Al-Shamrookh*, 2017-Ohio-1021.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aderagew Tedla, | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 15AP-1094 |
| | : | (C.P.C. No. 13CV-9240) |
| v. | : | (REGULAR CALENDAR) |
| Bassel M. Al-Shamrookh, | : | |
| Defendant-Appellant/ Cross-Appellee, | : | |
| Chicago Automotive, Inc., | : | |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on March 21, 2017

**On brief:** *Gillett Law Office, LLC,* and *Gary A. Gillett,* for Aderagew Tedla. **Argued:** *Gary A. Gillett.*

**On brief:** *Omar Tarazi*, for Bassel M. Al-Shamrookh. **Argued:** *Omar Tarazi.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Bassel M. Al-Shamrookh, defendant-appellant/cross-appellee ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas in which the court overruled appellant's objections and adopted the magistrate's decision. Aderagew Tedla, plaintiff-appellee/cross-appellant ("appellee") has filed a cross-appeal, appealing

from two judgments of the trial court in which the trial court overruled appellee's objections and adopted the magistrate's decisions.

{¶ 2}  Appellant and appellee were equal owners in a car repair business, Chicago Automotive, Inc. ("the company"), defendant, which they formed in 2006. They leased the premises on which the company was located.  The issues in the present case arise from the breakdown of their business relationship.

{¶ 3}  On June 12, 2013, appellee purchased the premises on which the company was located. Appellee then terminated the lease agreement effective July 31, 2013, and claimed the business had failed to pay rent for several months.

{¶ 4}  On August 20, 2013, appellee filed a complaint against appellant and the company. Sometime around September 1, 2013, appellant removed tools and equipment from the business premises. Appellant sold the equipment to a business associate on September 3, 2013 for $2,000.

{¶ 5}  On September 3, 2013, appellee filed an amended complaint, alleging claims for forcible entry and detainer, damages for non-payment of rent, dissolution of the corporation, derivative action, right to temporary restraining order and injunctive relief, theft and conversion, and punitive damages. Appellee also filed a motion for a temporary restraining order ("TRO") and preliminary and permanent injunction, seeking the return of the personal tools and a personal computer appellant allegedly took from the company on September 1, 2013. The trial court granted a TRO on September 5, 2013.

{¶ 6}  On September 6, 2013, appellee filed a motion for contempt for violation of the TRO, claiming appellant sold his personal tools and equipment in violation of the TRO. On October 15, 2013, the magistrate issued a decision following a hearing on appellee's motion for preliminary injunction, finding appellant was not in contempt because he sold the property before the TRO went into effect, and denying the preliminary injunction. Appellee filed objections and supplemental objections to the magistrate's decision, which the trial court denied on March 13, 2014.

{¶ 7}  A bench trial was held before the magistrate on appellee's complaint, and the magistrate issued a decision on June 11, 2015.  In the decision, the magistrate found the following: (1) there did not exist a preponderance of evidence as to the identity of all the property appellant removed from the business premises or as to the true owner of the

property at issue, (2) appellee was entitled to an award of $4,000 for lost earnings, (3) appellant was not entitled to one-half of the $2,000 rental security deposit, as the security deposit concerned only the real property in which appellant never held an interest, and not corporate property, (4) appellee was entitled to an award of $2,000 for appellant's removal and sale of tools and equipment, (5) appellee was entitled to an award of $1,785 for the electrical fixtures and wiring that appellant maliciously damaged in connection with taking the tools, (6) appellee was entitled to an award of $2,700 for two months of unpaid rent, (7) there was insufficient evidence to demonstrate that appellant was paying himself more than his share of the profits, (8) a derivative action would be allowed if counsel submitted an agreed entry as to the same, and (9) appellee was entitled to an award of punitive damages of $10,000, pursuant to R.C. 2315.21(D)(4), based on appellant's acts of theft and conversion.

{¶ 8} Appellant filed objections and supplemental objections to the magistrate's decision. On December 2, 2015, the trial court adopted the magistrate's decision and overruled appellant's objections and supplemental objections, without giving any specific reasoning. Appellant appeals the trial court's final judgment, asserting the following assignments of error:

> [I.] The Trial Court erred as a matter of law in adoption [of] the Magistrate's decision awarding Appellee $10,000 in punitive damages.
>
> [II.] The Trial Court erred as a matter of law in adopting the Magistrate's finding that evidence was clear and convincing that Defendant-Appellant committed acts of theft and conversion from Plaintiff-Appellee.
>
> [III.] The Trial Court erred as a matter of law in adopting the Magistrate's finding of malice for purposes of the punitive damage award.
>
> [IV.] The Trial Court erred as a matter of law in adopting the Magistrate's decision in failing to follow Ohio Revised Code 231[5].21 when making its award of punitive damages.
>
> [V.] The Trial Court erred in adopting the Magistrate finding that "Defendant does not deny he purloined some property."

[VI.] The Trial Court erred as a matter of law in adopting the Magistrate's award of $4,000 to Plaintiff-Appellee Mr. Tedla for lost income.

[VII. and VIII.] The Trial Court erred as a matter of law in adopting the Magistrate's finding that two months of rent went unpaid and allowing a recovery of $2,700 against the Corporation.

[IX.] The Trial Court erred as a matter of law in adopting the Magistrate's finding that Defendant was not entitled to any credit for the security deposit.

[X. and XI.]   The Trial Court erred in adopting the magistrate's finding that Defendant-Appellant damaged certain electrical fixtures and wiring, and that he did so maliciously.

[XII.] The Trial Court erred as a matter of law in adopting the Magistrate's award of $1,785 in damages for the alleged damaged electrical fixtures and wiring against Defendant-Appellant.

[XIII.] The Trial Court erred as a matter of law in adopting the Magistrate's finding and award that $2,000 is a fair and just recovery for Plaintiff-Appellee regarding the property acknowledged to be taken by Defendant-Appellant.

[XIV.] The Trial Court erred as a matter of law in adopting the Magistrate's decision to allow Plaintiff-Appellee to continue with a derivative action.

{¶ 9} Appellee also appeals the trial court's final judgment, as well as the court's March 13, 2014 decision and entry, asserting the following three cross-assignments of error:

[I.] The Trial Court Erred in Adopting the Magistrate's Decision in Which the Magistrate Found That Appellant, Bassel M. Al-Shamrookh Was Not in Contempt For his Admitted Violation of The Trial Court's Temporary Restraining Order.

[II.] The Trial Court Erred in Adopting the Magistrate's Decision as The Magistrate Failed to Shift to Appellant, Bassel M. Al-Shamrookh the Burden of Proving The Defense of

"Impossibility of Compliance" For Appellant's Admitted Violation of The Trial Court's Temporary Restraining Order.

[III.] The Trial Court Erred in Adopting the Magistrate's Decision as the Magistrate's Reliance on The Defense of Impossibility of Compliance Does Not Apply to the Claim That Appellant Failed to Return The Personal Property of Appellee/Cross-Appellant, Aderagew Tedla in Contempt of The TRO.

{¶ 10} Appellant and appellee address appellant's first, second, third, fourth, and fifth assignments of error together, so we shall too. Appellant argues in his first assignment of error that the trial court erred as a matter of law when it adopted the magistrate's decision awarding appellee $10,000 in punitive damages. Appellant argues in his second assignment of error that the trial court erred as a matter of law when it adopted the magistrate's finding that evidence was clear and convincing that appellant committed acts of theft and conversion. Appellant argues in his third assignment of error that the trial court erred as a matter of law when it adopted the magistrate's finding of malice for purposes of the punitive damages award. Appellant argues in his fourth assignment of error that the trial court erred as a matter of law when it adopted the magistrate's decision that failed to follow R.C. 2315.21 when making its award of punitive damages. Appellant argues in his fifth assignment of error that the trial court erred when it adopted the magistrate's finding that "[d]efendant does not deny he purloined some property."

{¶ 11} In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Generally, an appellate court reviews the trial court's decision to adopt, reject, or modify the magistrate's decision under an abuse of discretion standard. *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 16. "An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *PHH Mtge. Corp. v. Ramsey*, 10th Dist. No. 13AP-925, 2014-Ohio-3519, ¶ 14, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.). We review

questions of law de novo. *Id.*, citing *State v. Vinson*, 11th Dist. No. 2013-L-015, 2013-Ohio-5826, ¶ 8.

{¶ 12} Judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). Questions of fact are best left to the trier of fact. *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.*, 94 Ohio St.3d 54 (2002). It has long been held that factfinders are generally charged with drawing reasonable inferences from established facts and view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Mid-America Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St.3d 367, 2002-Ohio-2427, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). If the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment most favorable to sustain the verdict and judgment. *Seasons Coal Co.*

{¶ 13} In his brief, appellant first asserts that R.C. 2315.21(C)(2) requires a finding of compensatory damages as a condition before awarding punitive damages. Appellant contends that, because the magistrate did not make such a finding, the magistrate erred as a matter of law in awarding punitive damages. Appellant also argues R.C. 2315.21(D)(2)(b) requires the court not award punitive damages in excess of the lesser of two times the total compensatory damages or 10 percent of the individual's net worth, but the magistrate did not make a finding as to total compensatory damages or appellant's net worth.

{¶ 14} However, appellant did not raise the magistrate's non-compliance with R.C. 2315.21 in either his objections to the magistrate's decision or his supplemental objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv) provides that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Any failure to object to a finding of fact or conclusion of law to the

trial court results in a waiver of the right to appeal such error. Therefore, we find appellant waived his arguments that pertain to R.C. 2315.21.

{¶ 15} Appellant next argues that even if the statute did not limit awards for punitive damages, the $10,000 punitive damages award would still be a clear abuse of discretion as it represents a windfall of about one year of appellee's gross income and a hardship of one year of appellant's gross income. However, like the above argument, appellant failed to raise this specific argument in his objections to the magistrate's decision; thus, he has waived this assertion.

{¶ 16} Appellant next argues the magistrate and trial court erred when they found appellant's actions in removing the property from the company's premises amounted to theft and conversion. Appellant points out that he was president of the company at the time and had authority to supervise and control the business, while also pointing out that the company did not operate with corporate formalities. Appellant asserts that appellee cancelled the business's lease and demanded from appellant that the company move from the premises, and, at the time, appellant was under no order that prevented him from exercising his authority as president of the company. Appellant further points out that appellee had several estimates as to the value of the business equipment, and the amount appellant sold it for was higher than appellee's last estimate.

{¶ 17} On this issue, the magistrate found it was clear that appellant committed acts of theft and conversion in awarding appellee punitive damages. The magistrate found that appellant did not deny that he "purloined" some property.

{¶ 18} Initially, appellant did not specifically raise as an objection before the trial court that, as president of the company, he had the authority to supervise and control the business, and he did not raise any issue with the company operating without corporate formalities. However, he did generally raise in his objections that he was acting with a fiduciary duty to the company when he removed company's property from the property. Nevertheless, we find this argument without merit. As appellee points out, what appellant did by removing and selling the property was essentially close and liquidate the business without authority of the corporation to do so. Furthermore, appellant did not place the proceeds from the sale of the equipment in any corporate accounts; instead, appellant

retained the proceeds personally. Therefore, his actions belie his attempt to characterize his taking and selling of corporate property as being on behalf of the company.

{¶ 19} Appellant also contends the magistrate erred when he found his actions constituted theft and conversion. Appellant asserts that this conclusion contradicts the magistrate's previous findings that it was unclear what exactly was taken and who owned the property taken. However, the magistrate did not find there was no evidence that appellant took any of the property. Rather, the magistrate found "[t]here does not exist a preponderance of evidence as to the identity of all of the property removed and, importantly, the true owner of the property at issue," and "[s]ome property and equipment was plaintiff's personal property and some equipment belonged to Chicago. The evidence was not entirely clear on these related issues." (June 11, 2015 Mag. Decision at 2.)  We agree with the magistrate that the evidence and testimony on these issues was at times confusing, convoluted, vague, and circular. During testimony at trial, it was difficult to discern, at times, whether the testimony related to appellee's personal tools or company tools, as discussed infra. Nevertheless, our reading of the magistrate's decision is that, although there was insufficient evidence to identify the property and the owner of all of the property, there was evidence sufficient to demonstrate that appellant took some property belonging to appellee personally and the company. This is apparent by the magistrate's findings that "[a]pparently largely due to mistrust, [appellant] removed from the premises personalty owned by [appellee] and shop equipment and tools owned by the parties' business entity" and "[o]f the personalty [appellant] acknowledges he took, [appellant] testified that he sold it all for $2,000." (June 11, 2015 Mag. Decision at 1, 3.)  It is not clear whether the magistrate used "personalty" in the latter finding to mean property belonging to the company or personal property belonging to appellee, as he apparently used the term in the former finding; however, the magistrate did appear to believe there was sufficient evidence that appellant took property belonging to both appellee and the company. It is also noteworthy that appellant agreed in his post-trial brief that $2,000 was a fair valuation of the equipment, and he sold it for that amount.

{¶ 20} Insofar as appellant complains the magistrate failed to make findings to establish the elements of theft and conversion, appellant cites no authority for the proposition that the magistrate was required to do so. Furthermore, insofar as appellant

objects to the magistrate's finding that appellant did not deny that he "purloined" some property, appellant did admit that he took the property from the company and then sold it. Although he claims he took the property rightfully and with authority to do so, the magistrate and this court, infra, have found that he did not. Therefore, these arguments are without merit.

{¶ 21} Appellant also argues the magistrate abused his discretion when he allowed punitive damages without taking into consideration appellee's "unclean hands" and breach of fiduciary duty, which were demonstrated by appellee's purchase of the real property, cancellation of the lease, and eviction. However, appellant did not raise these arguments in his objections before the trial court. Therefore, appellant has waived these arguments.

{¶ 22} For the foregoing reasons, appellant's first, second, third, fourth, and fifth assignments of error are overruled.

{¶ 23} Appellant argues in his sixth assignment of error that the trial court erred when it adopted the magistrate's award of $4,000 to appellee for lost income. On this issue, the magistrate found:

> Moving on to consider the matter of plaintiff's claim that because defendant took his tools, plaintiff was unable to work for a period of time (approximately 5 months) and claims a significant loss in lost earnings. Upon consideration, it is noted that during the period of unemployment of several months, plaintiff took some time to replenish tools that were taken by defendant.
>
> While recognizing he had the duty to mitigate his losses, plaintiff nevertheless lessened his damages to some limited extent by purchasing the tools he needed to recover the ability to work at the shop and earn income. Plaintiff claims $10,000 loss in income (this includes rent payable to him as lessor), but the magistrate finds this excessive based upon the evidence. The magistrate does not find that credible evidence supports the amount of the claimed loss, but finds the evidence supports a recovery of $4,000 on this front.

(June 11, 2015 Mag. Decision at 2.)

{¶ 24} Appellant argues that appellee made no attempts to replace the $9,600 annual income he was receiving from the company, so his failure to do so was his own

choice.  However, the magistrate apparently believed that it was valid for appellee to take five months to replenish the tools that were taken by appellant and rebuild another car repair business. We agree. Car repair was appellee's area of expertise, he was educated in car repair, he already owned a building that was suited to house a car repair business, and he developed a client base at this location. We find no error in the magistrate's conclusion, and appellant directs us to no authority that would require reversal of this finding.

{¶ 25} Appellant next asserts that appellee should not be able to recover for loss of income because he bought the real estate that the company had been leasing, cancelled the lease, commenced eviction proceedings against the company in violation of his fiduciary duties, and voted that the company be dissolved. Appellant claims that appellee cannot recover for lost income resulting from the shutting down and eviction of the company when he was the cause of it shutting down. We disagree. At the time appellant entered the company building and took the tools, the company had not yet been dissolved or "shut down," and the parties were negotiating the terms of dissolution and division of tools and equipment. Appellant directs the court to no authority that indicates appellee's actions were in violation of a fiduciary duty or that appellant's removal of the tools and equipment under such circumstances is proper for a shareholder who believes he has been aggrieved by another shareholder. These arguments are without merit.

{¶ 26} Appellant also argues under this assignment of error that the magistrate erroneously based his decision to award loss of income to appellee on the loss of certain tools and equipment because the magistrate found the evidence was not clear as to what was taken and to whom it belonged. However, we have already addressed and dismissed this argument above. For the foregoing reasons, we overrule appellant's sixth assignment of error.

{¶ 27} Appellant argues his seventh, eighth, and ninth assignments of error together. Appellant argues in his seventh and eighth assignments of error that the trial court erred when it adopted the magistrate's finding that two months of rent went unpaid and appellee was entitled to recover $2,700. Appellant argues in his ninth assignment of error that the trial court erred when it adopted the magistrate's finding that appellant was not entitled to any credit for the security deposit. On this issue, the magistrate found:

> Defendant raises the issue of the $2,000 currently being held
> by plaintiff as a rental security deposit and urges that he is

> entitled to a $1,000 credit on any money he may owe plaintiff. Upon consideration, it is found defendant is not entitled to any credit in this regard. The money held as a security deposit strictly concerns the real property (in which defendant never held an interest) and not corporate property. Defendant is thus not entitled to the money or a credit for the money used as a security deposit.
>
> * * *
>
> Plaintiff is also making a claim against defendant Chicago for unpaid rent. It appears two months' rent went unpaid. Recovery in the amount of $2,700 is allowed for this loss to be paid to plaintiff, the building owner and lessor.

(June 11, 2015 Mag. Decision at 2-3.)

{¶ 28} With regard to the magistrate's decision that two months of rent went unpaid, appellant claimed he paid the prior landlord three months rent for May, June, and July 2013. However, appellee testified that the rent of $1,350 was unpaid for July and August 2013. He said he knew those months were not paid because he was the one who always paid the rent. He said appellant never told him that he had paid the rent for those months. He also stated he became the owner of the premises on June 13, 2013, and he never received any rent from the company. Thus, faced with conflicting evidence on the matter, the magistrate found appellee's testimony more credible. We have no reason to reject the magistrate's credibility determination, and appellant has failed to demonstrate why we should do so. Therefore, we find the trial court did not err when it found the company must pay $2,700 to appellee, as landlord of the property.

{¶ 29} With regard to the security deposit, appellant asserts he is entitled to a $1,000 credit for his one-half share of the security deposit. However, as the magistrate explained, the security deposit was for the leased premises and such was an asset of the company. Thus, the claim for the security deposit was one for the company and not for appellant individually. Therefore, this argument is without merit. For the foregoing reasons, appellant's seventh, eighth, and ninth assignments of error are overruled.

{¶ 30} Appellant argues his tenth, eleventh, and twelfth assignments of error together. Appellant argues in his tenth and eleventh assignments of error that the trial court erred when it adopted the magistrate's finding that appellant damaged certain

electrical fixtures and wiring, and that he did so maliciously. Appellant argues in his twelfth assignment of error that the trial court erred when it adopted the magistrate's award of $1,785 in damages for the alleged damaged electrical fixtures and wiring.

{¶ 31} Appellee alleged that, in stealing the equipment from the business premises, appellant damaged circuit breakers and electrical connections. Appellee testified that the cost to repair the electrical damage was $1,785, and the magistrate awarded said amount. Appellant argues that appellee did not produce any photographs of the damage, did not submit invoices to prove the cost to repair the damage, and did not witness appellant damage the electrical connections, so there was "zero" evidence that he caused the damage. Appellant also asserts that, even if appellee proved he damaged the electrical connections, the magistrate erred when he found he caused the damage maliciously. Finally, appellant contends the magistrate erred when he rendered him liable for the damage award instead of the company, which was the actual tenant, and the company should have been given a credit for the security deposit.

{¶ 32} We find the magistrate did not err in these determinations. Appellant has admitted to taking the property. At the same time appellee discovered the property missing, he also discovered the damaged electrical connections. Appellee also testified that the security system was activated when he entered the premises and discovered both the missing property and the damage to the electrical system. Only appellee and appellant knew the security system code. Appellee's testimony provides strong circumstantial evidence that it was appellant who damaged the electrical connections while in the process of removing the equipment from the premises, and we have no reason to disturb the magistrate's credibility determination.

{¶ 33} As for the amount of damages, appellee testified that appellant damaged the electrical connections when he removed the car lifts.  He testified he paid $400, $600, and $785 to repair the damages. We have no reason to disturb the magistrate's decision. With regard to maliciousness, although it is unclear under what theory the magistrate awarded appellee damages for appellant's destruction of the electrical connections, the magistrate could have found malice was apparent here because appellant was angry at appellee for buying the premises and evicting the company, and he surreptitiously entered the premises and removed tools and equipment after normal work hours. Further, as for

appellant's argument that it should be the company that is responsible for the electrical damage and not him personally, we have already found that he was not acting on behalf of the company when he removed property from the business premises. For these reasons, we overrule appellant's tenth, eleventh, and twelfth assignments of error.

{¶ 34} Appellant argues in his thirteenth assignment of error that the trial court erred when it adopted the magistrate's finding and award that $2,000 was a fair and just recovery for appellee regarding the property appellant acknowledged he removed. Appellant first argues that the trial court confused appellee's personal property with the company property when it awarded the $2,000 to appellee, personally, for appellant's removal of the equipment. Appellant contends the equipment was company equipment and the award should have been in the company's favor.  Appellee concedes in his brief that the $2,000 award was for appellant's removal of company property, and the magistrate should have awarded the $2,000 to the company instead of appellee, personally.

{¶ 35} However, despite appellee's concession, we are not so certain that the magistrate meant to award $2,000 to the company based on appellant's removal of company property. With regard to the $2,000 award, the magistrate refers to the property taken as "personalty." As explained above, it is not clear whether the magistrate's use of the term "personalty" is referring to movable company property, as opposed to real property, or to personal property belonging to appellee. The magistrate clearly used the term "personalty" earlier in the decision to refer to property owned individually by appellee. Furthermore, although the gist of the proceedings and the decision seem to suggest that the property appellant took and later sold for $2,000 was company property, it appears that possibly six of those items that appellant later sold fit the description of personal items belonging to appellee established by his testimony and exhibits. As mentioned above, at times, the testimony and evidence were not clear as to which property was being claimed as appellee's personal property and which property was company equipment. The testimony and evidence was confusing, vague, and circular. In the end, as much as we would like to simply follow the will of the parties and change the magistrate's award to reflect an award of $2,000 to the company—if for no other reason than to provide the parties the finality we suspect they desire—we cannot reconcile the

magistrate's decision and the evidence to arrive at that conclusion with any certainty. In addition, our discussion, infra, under appellant's fourteenth assignment of error with respect to a derivative action adds further uncertainty as to the magistrate's intent in this respect. Therefore, we must remand the matter to the trial court for further clarification of this issue.

{¶ 36} Appellant also argues that, because he was a 50 percent owner of the company, the $2,000 award for the equipment should have been only $1,000. However, as we discussed above, any share of the division of assets to which appellant is entitled as a shareholder in the company is a matter to be determined on the dissolution and shutting down of the company.

{¶ 37} Appellant also argues the magistrate failed to give him credit for the company equipment that remained on the company premises which appellant testified was worth about $10,000. However, again, any share of the division of assets to which appellant is entitled is a matter to be determined on the dissolution and shutting down of the company. For these reasons, we sustain in part and overrule in part appellant's thirteenth assignment of error.

{¶ 38} Appellant argues in his fourteenth assignment of error that the trial court erred when it adopted the magistrate's decision to allow appellee to continue with a derivative action pursuant to Civ.R. 23.1 which provides:

> In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs.

{¶ 39} Thus, complaining shareholders must "(1) spell out the efforts made to have directors or the other shareholders take the action demanded, (2) explain why they failed in this effort or did not make it, and (3) show that they 'fairly and adequately' represent the interests of other shareholders 'similarly situated.' " *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St.3d 377, 379 (1996), quoting Civ.R. 23.1.

{¶ 40} In the present case, appellee responds that he requested a derivative action in his complaint and identifies the company as a party. Appellee also asserts the magistrate's decision made it clear that a derivative action was being granted, citing as proof the following passage: "Similarly, plaintiff has let be known that he wishes to pursue a derivative action. Once again, and upon consideration, if an agreed entry is submitted by counsel, the magistrate will approve same." (June 11, 2015 Mag. Decision at 4.)

{¶ 41} However, we do not read the above passage as permitting appellee to pursue a derivative action. To the contrary, it is clear the magistrate indicated he would allow a derivative action only on the submission of an agreed entry after the decision. We find no agreed entry in the record. Thus, it appears that the magistrate never granted appellee the authority to pursue a derivative action. Consistent with this view is that it appears from the magistrate's decision that the magistrate made no award specifically payable to the company but only to appellee personally without mention of the company's interest in any award.

{¶ 42} Courts have held that the trial court must make a determination that the plaintiff is entitled to maintain a shareholders' derivative action pursuant to Civ.R. 23.1. *See*, *e.g.*, *Carlson v. Rabkin*, 152 Ohio App.3d 672, 2003-Ohio-2071, ¶ 11 (1st Dist.), citing *Adair v. Wozniak*, 23 Ohio St.3d 174, 176 (1986) (pursuant to Civ.R. 23.1, a court must preliminarily determine if the pleadings state an injury to the plaintiff on an individual claim as distinguished from an injury that indirectly affects shareholders or affects them as a whole); *Pullins v. Harmer*, 5th Dist. No. 08CA000007, 2008-Ohio-4528, ¶ 8 (finding the trial court is required to review the complaint for compliance with the specific pleading requirements of Civ.R. 23.1). Also, this court has before found that, although the trial court may have failed to expressly indicate whether the plaintiff was entitled to maintain a derivative action under Civ.R. 23.1, we may presume the trial court

granted a derivative action based on the trial court's actions and awards. *Niehaus v. The Columbus Maennerchor*, 10th Dist. No. 07AP-1024, 2008-Ohio-4067, ¶ 41.

{¶ 43} In the present case, the magistrate did not make an express or implied determination as to whether appellee complied with the requirements of Civ.R. 23.1. Instead, the magistrate indicated only that it would permit a derivative action if the parties submitted an agreed entry to that effect. The parties failed to submit such agreed entry. Thus, it does not appear that the magistrate ever examined the provisions in Civ.R. 23.1 for allowance of a derivative action and never granted appellee authority to pursue a derivative action. This finding has implications for our remand of the matter under the thirteenth assignment of error. If the trial court intended to award the $2,000, discussed under the thirteenth assignment of error, to the company, but failed to grant a derivative action, the award would have been in error. These issues must be addressed and reconciled on remand. Notwithstanding, for these reasons, we find appellant's fourteenth assignment of error meritorious and sustain it.

{¶ 44} We next address appellee's three cross-assignments of error. Appellee argues in his first cross-assignment of error that the trial court erred when it adopted the magistrate's decision finding that appellant was not in contempt for his admitted violation of the trial court's TRO. On this issue, the magistrate concluded that "there was no clear demonstration that defendant violated the terms of the TRO inasmuch as service of that document on him was not made *before* he had sold the property to a friend of his." (Emphasis added.) (Oct. 15, 2013 Mag. Decision at 3.)

{¶ 45} Civil contempt is remedial or coercive in nature and is imposed to benefit the complainant. *Pugh v. Pugh*, 15 Ohio St.3d 136, 139 (1984). It is well-settled that to find a litigant in contempt, the court must find the existence of a valid court order, that the offending party had knowledge of such order, and that such order was, in fact, violated. *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295 (10th Dist.1990). To demonstrate civil contempt, the violation of a court order must be demonstrated by clear and convincing evidence. *Ryan v. Ryan*, 10th Dist. No. 14AP-28, 2014-Ohio-3049, ¶ 12, citing *Rife v. Rife*, 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 10, citing *Hopson v. Hopson*, 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 19. But, in the civil context, intent to violate the order need not be proved. *Pugh* at paragraph one of the syllabus. Once the

complainant has satisfied his or her initial burden of demonstrating the other party violated a court order, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence. *Ryan* at ¶ 12. An appellate court will not reverse a trial court's finding of contempt absent an abuse of discretion. *Rife* at ¶ 9, citing *Hopson* at ¶ 9. An abuse of discretion means more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 46} Appellee contends that it is not disputed the TRO was a valid order, that appellant had knowledge of the TRO, and that he did not comply with the TRO. Appellee points out that the alleged sale of the company equipment occurred on September 3, 2013, the day before the September 4, 2013 hearing on the TRO. Appellee reasons that the purpose of the TRO was to return the parties to status quo, and refusal to return the equipment constituted a violation of the TRO.

{¶ 47} We reject appellee's reasoning for the same simple reason provided by the magistrate in denying appellee's motion for contempt. The TRO was filed September 3 and signed September 5, 2013, and directed appellant to return the subject property by a certain time on September 4, 2013. As he sold the equipment on September 3, 2013, before the TRO was signed and before the deadline for returning the property, he could not have been in violation of the TRO and, thus, could not be held in contempt. Therefore, we overrule appellee's first cross-assignment of error.

{¶ 48} We address appellee's second and third cross-assignments of error together. Appellee argues in his second cross-assignment of error that the trial court erred when it adopted the magistrate's decision as the magistrate failed to shift the burden to appellant of proving the defense of impossibility of compliance for appellant's admitted violation of the trial court's TRO. Appellee argues in his third cross-assignment of error that the trial court erred when it adopted the magistrate's decision as the magistrate's reliance on the defense of impossibility of compliance does not apply to the claim that appellant failed to return the personal property of appellee in contempt of the TRO.

{¶ 49} However, we find no error with the magistrate's determination. Initially, we note that contrary to appellee's arguments, appellant did not "admit" to violating the TRO. Notwithstanding, appellee's arguments are non-starters. The trial court's basis for

denying appellee's motion for contempt was not based on impossibility of compliance but, rather, that appellant was not in violation of the TRO because he was not subject to the TRO at the time he sold the property to his business associate. Therefore, we overrule appellee's second and third cross-assignments of error.

{¶ 50} Accordingly, appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error are overruled, appellant's thirteenth assignment of error is sustained in part and overruled in part, and appellant's fourteenth assignment of error is sustained.  Appellee's three cross-assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part.  This matter is remanded to that court to clarify to whom it meant to award the $2,000 and reconcile the failure to grant a derivative action, if necessary.

*Judgment affirmed and reversed in part;*
*cause remanded.*

KLATT and BRUNNER, JJ., concur.

_____